IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MICHAEL B. ELLSWORTH,

                Plaintiff,                      OPINION & ORDER

v.

                                                  13-cv-31-jdp

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

      Plaintiff Michael Ellsworth seeks judicial review of a final decision of the Acting Commissioner of Social Security finding him not disabled before November 22, 2011, within the meaning of the Social Security Act. Plaintiff contends, principally, that remand is warranted because the Administrative Law Judge (ALJ): (1) wrongly discredited the opinions of plaintiff's treating specialist; (2) wrongly assessed plaintiff's credibility; (3) failed to include dispositive facts in the hypotheticals he posed to the vocational expert; and (4) mechanically applied the age categories in determining that plaintiff was not disabled until November 22, 2011. According to plaintiff, these errors render the ALJ's determination deficient and without the support of substantial evidence. The court agrees and will remand the case to the Commissioner for further proceedings.

BACKGROUND

**A. Procedural Background**

      Plaintiff, born in 1956, completed tenth grade and has held a number of jobs in small engine repair, materials handling and roofing, furniture assembly, and medical equipment assembly. On May 4, 2010, plaintiff filed an application for supplemental security income, alleging a disability beginning that day. In his application, plaintiff initially identified manic

depression and Hepatitis C as the conditions that limited his ability to work, but throughout the course of his application, plaintiff also alleged that pain in his left arm, back, and neck prevented him from working.

Plaintiff's initial application for Social Security benefits was denied. After a hearing, ALJ William S. Coleman denied plaintiff's application in part and granted it in part. The ALJ concluded that prior to November 22, 2011—the day before plaintiff turned 55-years-old—plaintiff had the residual functional capacity to perform less than a full range of light work and, therefore, was not disabled within the meaning of the Social Security Act. According to the ALJ, however, once plaintiff turned 55-years-old, he became disabled and was entitled to benefits. R. 23.[1] The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final determination of the Commissioner. On January 23, 2013, plaintiff filed a timely complaint seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

B.  Relevant Medical Evidence

The medical record in this case spans from 2009 to 2011 and indicates that plaintiff suffers from both physical and mental impairments. The ALJ discussed the medical evidence for these impairments separately, and the court will follow the order of the ALJ's opinion.

1.  Physical Impairments

In January 2009, plaintiff completed a medical history form as part of his intake screening with the Wisconsin Department of Corrections. R. 337-40. On this form, plaintiff noted that he had chronic back problems. R. 337. Shortly before his release, plaintiff sought

---

[1] Record citations are to the Administrative Record, Dkt. 7.

treatment for neck, right shoulder, left hand, and left elbow pain, as well as for numbness in his right ulnar nerve. R. 341-48. An x-ray revealed only mild degenerative joint disease. R. 350.

In May 2010, after his release from the Department of Corrections, plaintiff sought treatment from the Dean Clinic for pain in his arms and neck. He denied that any specific injury or trauma caused the pain, but reported that his pain was at a ten on a zero-to-ten point scale. R. 426-27, 445. Plaintiff's range of motion and physical exam were normal. That same month, plaintiff underwent an EMG, which revealed findings of carpal tunnel syndrome, mild ulnar neuropathy, and left C8 radiculopathy. R. 442. In June, Dr. Lawrence Ozers, MD, plaintiff's treating primary care provider, formally diagnosed plaintiff with these conditions. R. 438. Dr. Ozers noted, however, that plaintiff still had normal range of motion in his neck and normal strength in his arms. Dr. Ozers recommended that plaintiff wear a wrist splint and referred him to physical therapy. R. 439. Plaintiff refused to wear the splint and did not attend physical therapy. *Id.*

A few months later, plaintiff returned to the Dean Clinic and saw Dr. Brian Walsh, MD, a neurologist. Plaintiff denied any pain in his right shoulder, but reported intense burning in his left hand and moving up through his arm to his neck. R. 427. Dr. Walsh ordered an MRI, which did not reveal any brain pathology, but did identify degenerative changes in plaintiff's spine. R. 428. Dr. Walsh referred plaintiff to Dr. Natasha Frost, MD, and plaintiff saw her in September 2010. Dr. Frost's notes indicate that plaintiff had normal motor tone, no pronator shift, and full muscle power in his arms and legs. R. 519. Dr. Frost also noted that plaintiff was hypersensitive in his left arm and in his back, from the shoulder down. *Id.* A month later, in a follow-up visit with Dr. Frost's physician's assistant, Jessica Szpak, plaintiff reported the same symptoms, but still had normal tone, muscle power, and coordination in his arms and legs. R. 501-02.

Plaintiff returned to jail in November 2010, but had work-release privileges. His treatment was somewhat restricted, although his medical records show that plaintiff visited the Dane County Sheriff's Office medical staff several times. R. 593-94. He again reported pain in his left arm and in his neck, and staff recommended that he complete physical therapy. On an authorized off-site medical visit, plaintiff asked Dr. Ozers to complete paperwork for plaintiff's disability determination. R. 666. Dr. Ozers confirmed plaintiff's history of left arm pain, mild carpal tunnel syndrome, ulnar neuropathy, and possible radiculopathy. Dr. Ozers noted that the exact cause of plaintiff's pain was unclear and that Dr. Frost and Ms. Szpak were evaluating this issue. R. 667. Plaintiff had a full range of motion in his neck and shoulders and no significant tenderness in either, but had decreased sensation to touch on his left arm. *Id.* Dr. Ozers again emphasized that plaintiff would benefit from physical therapy. *Id.*

In February 2011, as part of plaintiff's application for Social Security benefits, state consulting physician Dr. George Walcott, MD, completed a Physical Residual Functional Capacity Assessment. R. 632-39. Dr. Walcott reported that plaintiff had been diagnosed with degenerative disc disease and Hepatitis C. Dr. Walcott opined that plaintiff's description of his symptoms was only partially credible, as it was often inconsistent and conflicted with plaintiff's actual functioning. Dr. Walcott placed some exertional limitations on plaintiff, noting that he could occasionally lift up to 20 pounds, frequently lift up to 10 pounds, stand and walk for up to 6 hours in an 8-hour workday, and sit for up to 6 hours in an 8-hour workday. Dr. Walcott did not recommend any other limitations and ultimately concluded that plaintiff had the residual capacity to perform light exertional work.

Plaintiff also asked Dr. Frost and Ms. Szpak to complete a medical assessment form to include in his application for Social Security benefits. R. 682-86. The form stated that plaintiff had received treatment every three to six months since September 2010, had been diagnosed

with a spinal cord lesion and neuropathic pain syndrome, suffered from chronic pain with an unknown prognosis, and experienced symptoms frequently, but not constantly. The form also indicated that plaintiff would have difficulty with: routine tasks at a constant pace; meeting strict deadlines; fast-paced tasks; and exposure to work hazards. In estimating plaintiff's limitations, the form concluded that he could walk 3 or 4 blocks, sit or stand for only 20 minutes at a time, for no more than 4 hours in a normal workday, and would need to take more than 10 unscheduled breaks of five to ten minutes each day. The form also concluded that plaintiff could occasionally lift less than 10 pounds, rarely lift 10 pounds, and never lift 20 pounds or more. Finally, the form concluded that plaintiff would have to be absent from work for more than four days a month because of his pain.

2.  **Mental Impairments**

The ALJ noted that the record is sparse on plaintiff's mental health issues and treatment. R. 20. At various times since 2009, plaintiff has been diagnosed with major depression, anxiety, bipolar disorder, and an unspecified mood disorder. Plaintiff also has a history of alcohol dependence and cocaine abuse. While in prison, plaintiff indicated that he had problems sleeping due to racing thoughts, but prison officials determined that when he took appropriate medication, his mental condition was stable. R. 365-73. In June 2010, after his release, plaintiff received care from the Mental Health Center of Dane County. Plaintiff saw Sarah Vilacruz, MSSW, LCSW. During his initial visit, plaintiff reported to Ms. Vilacruz that his medication was working, and that he was feeling good and sleeping well. R. 419. When plaintiff returned to jail in November 2010, he continued taking his medication and there were no behavioral problems or reports of increased mental health symptoms. R. 20.

As part of his application for Social Security benefits, plaintiff underwent consultive examinations with two different psychologists. The first was with Dr. Ron Johnson, PhD, in August 2010. According to Dr. Johnson, plaintiff presented "as barely making it in life." R. 423. Dr. Johnson went on to note that he had "no doubt that [plaintiff's] presenting depression and anxiety are clearly there, but more than likely he has marginal intelligence, almost certainly one or more disabilities in the form of learning and has struggled throughout life." *Id.* According to Dr. Johnson's report, plaintiff "was not trying to make more of his condition (malingering) from what [Dr. Johnson was] able to tell." *Id.* In his summary and recommendations section, Dr. Johnson concluded:

> 1. There is no doubt that this patient suffers severely from a variety of disturbances which certainly show themselves in a major depressive disorder and major anxiety disorder. It is likely that these mood disorders are based on a more basic neurological disorder as well as concomitant alcoholism disorder (largely recovered).
> 2. It seems that this man who has undoubtedly some kind of neurological disorder, showing itself in a kind of a learning disability or learning disabilities, has not been able to succeed in much of anything in life. He does present as a person who is very separate and has a kind of schizoid presentation. There is evidence to some degree of hallucinatory activity, but I am inclined to think this is more in the characterological phenomenon plus his depression rather than a true schizophrenia.
> 3. There is no doubt that this man is not capable of working. I do believe that he could work in the long run if he gets a good deal of support and understanding. It seemed that his brother is very helpful at this point, but he is in grave need of consistent counseling support, not perhaps in the form of depth psychotherapy, but rather in a supportive variety until he can get himself off ground zero, working to some degree and meeting other people.
> 4. I believe he is capable of managing his own funds, but for safety concern, I would recommend that his brother or some other responsible party be awarded funds if the Bureau decides to go in that direction.

R. 425.

Plaintiff's second consultive examination was with Dr. Gordon Herz, PhD, in February 2011. Dr. Herz reported that plaintiff appeared to be "mildly sad and also . . . mildly tense at times [but that he] does not show overt signs of distress." R. 589. Dr. Herz diagnosed plaintiff with alcohol dependence, a mood disorder, antisocial personality disorder, and a degenerative disc disease. R. 591. In opining on plaintiff's work capacity, Dr. Herz concluded that plaintiff

> would appear to have the ability to understand, remember and carry out simple instructions. His response to supervisors and co-workers is likely to be inappropriate at times with both withdrawal and irritability as potential responses. He would likely have at least mild difficulty withstanding work stresses and adapting to changes with his ability to tolerate stressors potentially substantially diminished in a context of resumption of abusive use of alcohol or other substances.

*Id.* Although Dr. Herz agreed that plaintiff's alcohol dependence and personality disorder would likely be lifelong conditions, he indicated that plaintiff's "symptoms may well be alleviated with the potential for improved functioning with involvement in appropriate and effective medication treatment." *Id.*

## C.  The Administrative Hearing and Decision

The ALJ held a hearing on December 19, 2011. Plaintiff was present, with counsel, as was Robert Neuman, a vocational expert (VE). R. 12. Plaintiff's medical records were accepted into evidence without objection, and the ALJ heard testimony from plaintiff and the VE. R. 72-117.

The ALJ asked plaintiff about his work history, his daily activities, and the reasons why he was unable to work. Plaintiff testified that his arm pain kept him from being able to work, R. 88, as did his panic attacks, general anxiety level, and memory issues, R. 92. Plaintiff explained that he was unable to lift anything with his left arm because of the pain and that he generally

tried to avoid using it all together. R. 93-94. He also noted that he had been fired from many of his prior jobs for poor work and attendance. R. 83, 85-86, 88.

The VE testified that plaintiff would be unable to perform any of his past relevant work with his current limitations, but that plaintiff could perform other jobs at the medium exertional level. R. 108-09. The ALJ posed a series of hypotheticals to the VE, all of which assumed a person of plaintiff's age and education. The hypotheticals included progressively more severe limitations, but each assumed a person who could perform unskilled work, with no contact with the public and only occasional interaction with coworkers. R. 108-11. The ALJ's most restrictive hypotheticals assumed a person who could perform light exertional work, but who: (1) could not sit for more than four hours in a normal workday; (2) could not stand for more than four hours in a normal work day; and (3) was limited to simple, routine duties that required only simple decisions and kept the person off task no more than 10% of the workday. The VE testified that there were jobs in the Wisconsin economy for which such a person would be qualified. The ALJ's final hypothetical added the further restriction that the person would be unable to use his left arm, and the VE testified that such a person would not be immediately employable, but could adjust to the use of only one hand and then be qualified for a number of jobs in the Wisconsin economy. R. 112.

The ALJ issued a decision on January 10, 2012, concluding that plaintiff was not disabled before November 22, 2011, but that he became disabled on that date. The ALJ noted that there was only one medical opinion in the record that addressed plaintiff's physical limitations—that of Ms. Szpak, who was working with Dr. Frost. The ALJ gave this opinion "little weight" as he determined that the opinion was Ms. Szpak's and not Dr. Frost's. R. 19. The ALJ then discussed the medical opinions on plaintiff's mental limitations. He assigned no weight to Dr. Johnson's opinion, concluding that it was "without support from the other

8

evidence of record." R. 20. He assigned "great weight" to Dr. Herz's opinion "as it [was] most consistent with the medical evidence." R. 21. After assigning weight to these opinions and considering them in tandem with the VE's testimony, the ALJ determined that plaintiff could have made a successful adjustment to jobs that existed in significant numbers in the national economy and, therefore, was not disabled within the meaning of the Social Security Act before November 22, 2011.

OPINION

When a federal court reviews a final decision by the Commissioner of Social Security, the Commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Even so, a district court may not simply "rubber-stamp" the Commissioner's decision. *See Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992). Rather, "the court must conduct a critical review of the evidence before affirming the [C]ommissioner's decision, and the decision cannot stand if it lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Hemminger v. Astrue*, 590 F. Supp. 2d 1073, 1079 (W.D. Wis. 2008) (internal citations omitted). To provide the necessary support for a decision to deny benefits, the ALJ must "build an accurate and logical bridge from the evidence to [his] conclusion." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

In this case, plaintiff argues that the ALJ erred in failing to assign weight to the medical assessment that Dr. Frost and Ms. Szpak completed, and that this error requires remand. Plaintiff also raises three, related issues, arguing that the ALJ: (1) improperly assessed plaintiff's credibility; (2) omitted significant facts in the dispositive hypothetical question he posed to the VE; and (3) mechanically determined that plaintiff was not disabled until he reached the age of fifty-five, despite having the same conditions beforehand. After reviewing the record in this case, the court concludes that the ALJ erred in analyzing Dr. Frost's medical opinion and that the error requires remand. The court will also address plaintiff's arguments on the ALJ's credibility determination, hypothetical questions, and application of the age categories, as these may be issues that the ALJ will have to revisit on remand.

**A. Dr. Frost and Ms. Szpak's assessment**

As the ALJ correctly noted, the medical assessment form that Dr. Frost and Ms. Szpak signed is the only non-agency opinion in the record that addresses plaintiff's physical limitations. Plaintiff argues that the ALJ gave too little weight to this opinion without adequately explaining his reasons for doing so. Before analyzing the adequacy of the ALJ's reasons for assigning the assessment "little weight," the court must address the threshold issue of whether the assessment is attributable to Dr. Frost or just Ms. Szpak. The distinction is important because Ms. Szpak is a physician's assistant and, under SSR 06-03p, she does not qualify as an "acceptable medical source" and her opinion can neither establish the existence of an impairment nor command "controlling" weight. *See* 20 C.F.R. § 416.927(c)(2).

The court notes that "the ALJ in a Social Security hearing has a duty to develop a full and fair record." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009); *see also* 20 C.F.R. § 416.912(d). This duty requires the ALJ to "seek additional evidence or clarification from a

medical source when the report from that source contains conflict or ambiguities that must be resolved or when the report does not contain all the necessary information." *Simms v. Astrue*, 599 F. Supp. 2d 988, 1003 (N.D. Ind. 2009). If there were doubts as to whose opinion the assessment contained, the ALJ should have sought clarification. Here, however, the ALJ simply attributed the assessment to Ms. Szpak alone and noted that she was "working for neurologist Dr. Frost." R. 18-19. But the form was addressed to Dr. Frost and, more importantly, it bears her signature at the end. R. 686. The ALJ did not confront either of these facts or explain his conclusion that the assessment does not qualify as Dr. Frost's opinion. In light of the importance of the assessment, the ALJ had a duty to pursue additional information. Because he did not, the ALJ failed to develop a full and fair record and remand is necessary.

The Commissioner does not genuinely dispute the issue, suggesting only half-heartedly that because Ms. Szpak actually completed the form, the ALJ correctly attributed the assessment to her alone. Dkt. 16, at 9. Like the ALJ, the Commissioner fails to explain how the court can ignore the fact that Dr. Frost *signed* the form, nor does the Commissioner offer any authority requiring an ALJ to consider a written opinion as coming only from the person who actually wrote it. Were the ALJ to find, as a matter of fact, that the assessment did not contain Dr. Frost's medical opinion, the court would have to accept that finding under 42 U.S.C. § 405(g), so long as the conclusion was supported by substantial evidence. But here, the ALJ's conclusory statement that the assessment was Ms. Szpak's alone falls well short of providing a sufficient explanation for such a finding. The ALJ erred in failing to attribute the assessment to Dr. Frost.

By itself, the ALJ's error does not require remand. *See David v. Barnhart*, 446 F. Supp. 2d 860, 873 (N.D. Ill. 2006) (Finding that a mistaken attribution was "not a harmful error as there were other significant inconsistencies in the record that justified the ALJ's refusal to give the treating physician's opinion controlling weight"); *cf. Mandella v. Astrue*, 820 F. Supp. 2d 911,

11

929 (E.D. Wis. 2011) ("[I]t was error for the ALJ to rely on the notes from a doctor who saw [a claimant] only one time and then to attribute that assessment to" another treating physician to use for purposes of showing inconsistency and assigning less weight). Here, because the ALJ began his evaluation of the assessment with the conclusory statement that it belonged to Ms. Szpak alone, his analysis of the opinion is deficient.

If the assessment contains Dr. Frost's opinion, the ALJ needed to use the factors contained in 20 C.F.R. § 416.927(c) to determine how much weight to assign to the opinion. As a practical matter, even if the ALJ properly determined that the opinion belonged to Ms. Szpak alone, he would have *still* needed to use the factors contained in § 416.927(c) to discuss what weight he assigned the opinion. *See* SSR 06-03p ("Although the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources,' . . . . These factors represent basic principles that apply to the consideration of all opinions from medical sources who are not 'acceptable medical sources.'"). The failure to explicitly discuss the § 416.927(c) factors is itself a deficiency that warrants remand. *See Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) (reversing an ALJ even when her "decision indicates that she considered opinion evidence in accordance with §§ 404.1527 and 416.927 [but] does not *explicitly address the checklist of factors* as applied to the medical opinion evidence") (emphasis added).

In this case, the ALJ's opinion does not directly identify the factors, and only implicitly emphasizes one of them. The discussion does not mention or address all of the § 416.927(c) factors, and leaves the court with nothing from which to conclude that the ALJ properly evaluated the opinion and assigned it its due weight. The reasoning focuses almost entirely on the assessment's inconsistency with the rest of the medical record. For example, the ALJ noted that the assessment described limitations for plaintiff's right arm, despite the fact that plaintiff

12

never complained of or received treatment for pain in his right arm. The ALJ also observed that plaintiff's later statements conflicted with the assessment's limitations on how far he could walk and how much he could lift.

These may be valid reasons to assign lower weight to the opinion, but the overall analysis is incomplete because the ALJ never matched these reasons against other factors that might entitle the assessment to higher weight. *See Pepper v. Colvin*, 712 F.3d 351, 366 (7th Cir. 2013) (substantial evidence exists if "it is apparent the ALJ considered *all* the relevant information and factors required") (emphasis added). In addition to considering the consistency of a medical opinion, § 416.927(c) directs an ALJ to consider: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion with medical signs and laboratory findings; and (4) the specialization of the treating source. The ALJ's decision lacks any mention of these factors, and therefore falls short of providing the comprehensive analysis required by the Social Security regulations. The court does not express an opinion as to how these factors apply in this case, but emphasizes that on remand, the ALJ must extend his discussion to each of them before assigning a particular weight to the assessment.

The Commissioner attempts to avoid this result by offering her own discussion of the factors. Dkt. 16, at 9-16. The attempt fails, however, because the Commissioner cannot cure deficiencies in the ALJ's explanation by supplying her own, ex post evaluation of a medical opinion—"what matters are the reasons articulated *by the ALJ*." *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) (original emphasis); *see also Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) ("[T]he Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace."). Beyond recounting and bolstering the inconsistencies the ALJ observed in the assessment, the Commissioner offers little to suggest that the ALJ took up a

comprehensive analysis of the § 416.927(c) factors. The ALJ's opinion is deficient because it fails to adequately explain the rationale for assigning such low weight to Dr. Frost's assessment of plaintiff's physical restrictions. Remand is therefore appropriate.

## B. Plaintiff's remaining issues

Plaintiff's remaining arguments are that: (1) the ALJ's assessment of plaintiff's credibility was flawed; (2) the ALJ's dispositive hypothetical did not include all of plaintiff's impairments; and (3) the ALJ improperly applied the age categories in determining that plaintiff was not disabled before he turned fifty-five. Having already found legitimate grounds for remand, the court need not address these issues in great detail. *See Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011) ("These flaws are enough to require us to remand [and w]e therefore needn't decide whether the reasons the ALJ gave in support of her adverse credibility finding . . . were so 'patently wrong' as to separately require remand.") (internal citations omitted). Because these issues closely relate to plaintiff's primary argument, however, the court will offer limited guidance.

### 1. Plaintiff's credibility

Plaintiff argues that the ALJ failed to apply SSR 96-7p and incorrectly disregarded his subjective complaints of pain with "boilerplate" language. The court will ordinarily afford credibility determinations considerable deference and uphold them if the ALJ gives "specific reasons for the finding that are supported by substantial evidence." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see also* SSR 96-7p ("[T]he adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements."). But "an ALJ cannot disregard subjective complaints of disabling pain just because a determinable basis

for pain of that intensity does not stand out in the medical record." *Moss*, 555 F.3d at 561; *see also* 20 C.F.R. § 416.929(c)(2); SSR 96-7p.

In this case, the ALJ recited the relevant medical evidence of plaintiff's history with pain in his left arm, and then concluded that plaintiff's "description of his symptoms and their impact on functioning has not been consistent and his description of the severity of his pain is often inconsistent with his presentation." R. 18. The ALJ offered examples of these inconsistencies, noting that despite his claims of pain and limited physical ability, plaintiff's medical examinations routinely showed normal gait and a full range of motion, and that plaintiff's daily activities undermined his claims about the intensity and effect of his pain. *Id.* Specifically, the ALJ noted that plaintiff had reported "no loss of function in his legs unless walking for prolonged periods of time," which conflicted with the statements he made in his application for Social Security benefits. The ALJ also observed that plaintiff reported to Ms. Szpak that he could only lift less than ten pounds, and rarely more, but later indicated that he could lift as much as sixty pounds, and could lift ten to fifteen pounds regularly. R. 18-19.

On balance, this analysis is much closer to providing the "specific reasons" required by SSR 96-7p than plaintiff suggests. But because the ALJ improperly evaluated Dr. Frost's opinion, and because that opinion may provide objective support for plaintiff's subjective complaints, the court suggests that the ALJ make a new credibility determination on remand. If the ALJ decides to afford more weight to Dr. Frost's opinion, he must also explain how that decision influences his overall determination of plaintiff's credibility. *See Mandella*, 820 F. Supp. 2d at 932 ("[T]he ALJ's credibility determination was patently wrong [when it] was intertwined with one of his reasons for refusing to give controlling weight to [an] opinion.").

15

### 2. The ALJ's hypothetical questions

Plaintiff also argues that the ALJ's dispositive hypothetical question to the VE omitted a critical limitation contained in Dr. Herz's opinion of plaintiff's mental health and capacity—namely, that plaintiff could only have occasional interaction with his supervisor. The ALJ characterized the VE's testimony as addressing "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience and residual functional capacity." R. 22. Plaintiff contends that by omitting the limitation on supervisor interaction, which was included in the medical opinion to which the ALJ assigned great weight, the VE's testimony could not have taken into consideration plaintiff's residual functional capacity (RFC).

As a preliminary matter, plaintiff is incorrect that the ALJ failed to ask the VE about limitations included in plaintiff's RFC. With regard to plaintiff's RFC, the ALJ found that plaintiff could

> [P]erform less than the full range of light work as defined in 20 CFR 416.967(b). The claimant can stand for no more than four hours in a normal workday and can sit for no more than four hours in a normal workday and requires a sit/stand option, allowing for alternating positions at 20 minute intervals, but would not be off task more than 10% of the work period. The claimant is limited to simple, routine and repetitive unskilled work with no contact with the public and only occasional interaction with co-workers and is precluded from tandem tasks. He is limited to a work environment free of fast-paced production requirements, involving only simple work-related decisions with few, if any, work place changes.

R. 15. The ALJ repeated his findings later in his opinion, identifying these same limitations. R. 21. In posing hypotheticals, the ALJ asked the VE to assume a person with these limitations. R. 108-12.

The source of plaintiff's would-be limitation is the report Dr. Herz prepared after his consultive examination. In describing plaintiff's work capacity, Dr. Herz noted that plaintiff's "response to supervisors and co-workers is likely to be inappropriate at times with both

16

withdrawal and irritability as potential responses." R. 591. Plaintiff characterizes this finding as limiting him "to only occasional interactions with supervisors." Dkt. 8, at 20. But the Commissioner correctly points out that Dr. Herz did not explicitly impose any such limit, and the ALJ's RFC determination did not include any restriction on how frequently plaintiff could interact with supervisors. Given that the ALJ did not omit critical facts or limitations, the court rejects plaintiff's argument that the hypothetical questions posed to the VE were insufficient. Of course, on remand, if the ALJ chooses to include some limitation on how frequently plaintiff may interact with his supervisor, the ALJ must then adjust the hypothetical questions accordingly.

### 3. Plaintiff's change in age categories

Plaintiff's final argument is that the ALJ did not properly consider plaintiff's proximity to a new age category in finding him not disabled before November 22, 2011. Under 20 C.F.R. § 416.963, a claimant's age can affect his ability to work and his entitlement to benefits. Section 416.963 sets three age categories, and explains that each category includes progressively higher presumed limits on a claimant's ability to work: (1) a "younger person" who is under 50; (2) a "person closely approaching advanced age" who is between 50 and 54; and (3) a "person of advanced age" who is 55 or older. The regulation also explains that the Social Security Administration

> will use each of the age categories that applies to you during the period for which we must determine if you are disabled. *We will not apply the age categories mechanically in a borderline situation*. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

17

20 C.F.R. § 416.963(b) (emphasis added). The interpretive manual that ALJs receive—the Hearings, Appeals and Litigation Law Manual (HALLEX)—discusses how ALJs must use these age categories in "borderline" situations.[2] Specifically, HALLEX II-5-3-2 provides that ALJs should "take a 'sliding scale' approach [where] the claimant must show progressively more additional vocational adversity(ies)—to support use of the higher age—as the time period between the claimant's actual age and his or her attainment of the next age category lengthens." The manual does not place any obligation on the ALJ to explain his decision, however, and explicitly notes that "[t]he adjudicator need not explain his or her use of the claimant's chronological age."

In this case, the ALJ stated in conclusory fashion that he was "[a]pplying the age categories non-mechanically, and considering the additional adversities in [plaintiff's] case." R. 22. But that is all the ALJ said on the issue. He did not discuss the "sliding scale" approach recommended by HALLEX or articulate any reason why plaintiff, without suffering any additional injuries or requiring any additional limitations, suddenly became disabled on November 22, 2011. Although HALLEX allows the ALJ to forgo such an explanation, courts in this circuit have not accepted this approach, and have emphatically held that "the ALJ's failure to acknowledge whether he considered claimant's borderline age situation or otherwise explain his age category determination requires remand." *Sopko v. Colvin*, No. 12-cv-6240, 2013 WL 5497276, at *12 (N.D. Ill. Oct. 3, 2013); *see also Christoffel v. Colvin*, No. 12-cv-148, 2013 WL

---

[2] The Seventh Circuit has yet to decide if HALLEX has the same binding effect on the Commissioner that a Social Security Ruling does. *Heard v. Astrue*, No. 11-cv-1584, 2013 WL 4659525, at *9 (N.D. Ill. Aug. 30, 2013) (citing *Davenport v. Astrue*, 417 F. App'x 544, 547 (7th Cir. 2011)); *Figueroa v. Astrue*, 848 F. Supp. 2d 894, 901 n.4 (N.D. Ill. 2012) (same). Other district courts in this circuit have concluded that "the HALLEX lacks the force of law, however, and is 'entitled to respect' only to the extent it is persuasive." *Anderson v. Astrue*, No. 09-cv-2399, 2011 WL 2416265, at *11 (N.D. Ill. June 13, 2011); *see also McMurtry v. Astrue*, 749 F. Supp. 2d 875, 881 (E.D. Wis. 2010) (citing cases).

4788095, at *5 (N.D. Ind. Sept. 9, 2013); *Figueroa*, 848 F. Supp. 2d at 902. Without some minimal articulation of his reasons, this court has no way to determine whether the ALJ complied with § 416.963's prohibition on mechanical application of the age categories.

As the court has already determined that remand is warranted on other grounds, the ALJ may not necessarily need to address this issue in reanalyzing plaintiff's case. On remand, the ALJ must first consider how much weight to assign to Dr. Frost's assessment and adequately explain that decision. Then, the ALJ should consider what effect, if any, the weight he assigns to the assessment has on plaintiff's credibility. If the ALJ ultimately concludes that plaintiff was not disabled before November 22, 2011, then he must discuss the age categories in enough detail to satisfy the court that they have not been applied mechanically.

ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying plaintiff Michael Ellsworth's application for disability benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 11th day of August, 2014.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge